IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSHUA FIGULI,** <br> **DAVID FIGULI,** <br> **EDUCATION EQUITIES FUNDS, LLC** <br> and **HUSSIAN COLLEGE, INC.,** <br>     Plaintiffs, <br><br> v. <br><br> **JEREMIAH STAROPOLI,** <br> **ADRIENNE SCOTT,** <br> **STEVEN WOJSLAW,** <br> **ERIC HELLER,** <br> **RONALD KELLY,** <br> **VELOCITY CAPITAL GROUP, LLC** and <br> **SUMMIT CAPTIAL FUNDING, LLC,** <br>     Defendants. | CIVIL ACTION <br><br> NO.  24-5408 |

**HODGE, J.**                                                                                                        July 31, 2025

<u>**MEMORANDUM**</u>

      This matter comes before the Court on the (1) Motion to Dismiss (ECF No. 20) filed by Defendants Summit Capital Funding, LLC and Velocity Capital Group, LLC (collectively, "Velocity"); (2) Motion to Dismiss (ECF No. 21) filed by Defendant Adrienne Scott ("Scott"); (3) Amended Motion for Leave to File an Amended Complaint ("Amended Motion for Leave") (ECF No. 37) filed by Plaintiffs Joshua Figuli, David Figuli, Education Equities Funds, LLC ("Education Equities Funds"), and Hussian College, Inc. ("Hussian College") (collectively, "Plaintiffs"); and (4**)** Motion to Compel Arbitration and Stay Proceedings (ECF No. 45) filed by Defendant Jeremiah Staropoli ("Staropoli). For the reasons that follow, the Court will grant in part and deny in part Plaintiffs' Amended Motion for Leave. In light of the Court's resolution of Plaintiffs' Motion, the Court denies as moot both Motions to Dismiss (ECF Nos. 20, 21). The Court also grants in part Staropoli's Motion to Compel Arbitration and Stay Proceedings.

I.  **Background**[1]

A brief description of the filing history in this case is warranted to place the issues before the Court in necessary context. Plaintiffs filed their original Complaint on September 4, 2024 in the Philadelphia County Court of Common Pleas, (ECF No. 1-1), seeking money damages on the following counts: (1) Racketeering Influences and Corrupt Organization Act ("RICO"), (2) breach of fiduciary duty, (3) disgorgement, (4) conversion, (5) fraud, and (6) conspiracy to commit fraud and conversion against Defendants Staropoli, Scott, Steven Wojslaw ("Wojslaw"), Eric Heller ("Heller"), Ronald Kelly ("Kelly"), and Velocity (collectively "Defendants"). (*Id.* at 201-08). Specifically, Plaintiffs alleged that

> [t]he Individual RICO Conspirators conspired to exercise control over the operations of a private college with the objective of securing personal gain by defrauding the Plaintiffs, financial institutions, the United States Government, students, vendors, accreditors and State licensing agencies so that they could obtain continuing access to student financial aid funds, CARES ACT funds, HEERF funds, State student financial aid funds and tuition and fee payments from students while diverting funds of the college to their personal benefit through the issuance of unauthorized bonuses, benefits and payment for personal expenses.

(ECF No. 1-1 at 5-6). On October 9, 2024, Velocity filed a Notice of Removal to this Court. (ECF No. 1).

In lieu of an answer, Defendants Velocity and Scott each filed a Motion to Dismiss on November 4, 2024 (ECF Nos. 20, 21).[2] Plaintiffs did not timely respond to these motions. Instead, Plaintiffs moved for leave to file an amended complaint on December 2, 2024 and, prior to any responsive filing from Defendants, filed an amended motion seeking leave to file an amended complaint on December 10, 2024. (ECF Nos. 33, 37). On December 24, 2024, Velocity

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.
[2] Only Defendants Staropoli and Kelly filed an Answer, which were respectively submitted on November 15, 2024 and January 13, 2025. (ECF Nos. 28, 46).

2

filed a Response in Opposition to Plaintiffs' Motion. (ECF No. 41). On January 10, 2025, Staropoli filed a Motion to Compel Arbitration and Stay Proceedings (ECF No. 45), to which Plaintiffs filed a Response in Opposition. (ECF Nos. 47, 48).

**II.     Plaintiffs' Amended Motion for Leave to File an Amended Complaint**

In their Amended Motion for Leave, Plaintiffs state that they desire to file their proposed Amended Complaint "to clarify claims as to the various Defendants, add and withdraw certain claims against specific Defendants, and otherwise rectify certain issues raised in Motions to Dismiss to render the Motions moot." (ECF No. 37 at 5). In the proposed Amended Complaint, (1) Plaintiffs assert claims of violation of RICO, fraud, conspiracy to commit fraud, conversion, and conspiracy to commit conversion against Staropoli, Scott, Kelly, Wojslaw, and Heller (Counts I - V); (2) Hussian College asserts a claim of breach of fiduciary duty against Staropoli, Scott, Kelly, Wojslaw, and Heller (Count VI); and Plaintiffs assert claims of aiding and abetting breach of fiduciary duty and negligence against Velocity (Counts VII and VIII). (ECF No. 37-1 at 38-56).

**A. Legal Standard**

Where an amendment is not available as of right, Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court may deny leave to amend where there is "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Futility, in this context, means the proposed amendment would not withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The decision to grant leave to amend rests in the court's sound discretion. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971).

**B. Discussion**

In response to Plaintiffs' Amended Motion for Leave, Velocity argues that, as to Counts VII and VIII, the Court should deny Plaintiffs' Motion on the grounds that the economic loss doctrine applies and therefore bars these claims. The Court agrees.

In Pennsylvania, the economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage." *Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 175 (3d Cir. 2008) (quoting *Adams v. Copper Beach Townhome Cmtys., L.P.,* 816 A.2d 301, 305 (Pa. Super. Ct. 2003)). Economic losses include damages due to loss of customers, sales, and profits. *See Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1269, 1270 (M.D. Pa. 1990).

Although Plaintiffs argue that they have suffered injury to their reputation and business goodwill, *see* ECF No. 37-1 at 3, ¶ 274, courts in this District have repeatedly held that reputational damage and loss of goodwill constitute economic loss, not injury to person or property. *See, e.g., Ferki v. Wells Fargo Bank, N.A.,* No. 10-2756, 2010 U.S. Dist. LEXIS 134328, at *10 (E.D. Pa. Dec. 20, 2010); *Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 951 (E.D. Pa. 1998); *American & Foreign Ins. Co. v. Phoenix Petroleum Co.*, 1998 U.S. Dist. LEXIS 9207, *5 (E.D. Pa. June 23, 1998); *Eagle Traffic Control v. Addco*, 882 F. Supp. 417, 419 (E.D. Pa. 1995) ("damage to [business] reputation" is "within the ambit of economic loss"); *Lucker Mfg. v. Milwaukee Steel Foundry*, 777 F. Supp. 413, 416 (E.D. Pa. 1991) ("damages for the loss of goodwill are in the nature of economic loss" and thus

are "excluded from tort recovery by the economic loss rule"); *International Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 1988 U.S. Dist. LEXIS 12215, *6 (E.D. Pa. Oct. 24, 1988).

Because Plaintiff's claims against Velocity result solely in reported economic loss and there has been no allegation of physical or property damage, the Court denies Plaintiffs' Amended Motion for Leave as to Counts VII and VIII. Due to none of the other Defendants filing a response in any manner, the remainder of the counts (Counts I-VI) are uncontested, and accordingly, the Court grants Plaintiffs' Motion as to these counts. *See* E.D. Pa. Loc. R. Civ. P. 7.1(c) ("In the absence of a timely response, the motion may be granted as uncontested.").[3]

### III.    Motions to Dismiss

Both Velocity and Scott's Motions to Dismiss were filed when the operative complaint in this matter was the original Complaint filed in September 2024. (ECF No. 1). Because the Court has now granted Plaintiffs' Amended Motion for Leave (with the exception of their claims against Velocity), the original Complaint is superseded by the Amended Complaint and is no longer the operative Complaint. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 126 (3d Cir. 2010) (earlier iterations of the complaint were non-operative; only the amended complaint was properly before the court). The Court will therefore deny as moot Velocity and Scott's Motions to Dismiss.

### IV.    Staropoli's Motion to Compel Arbitration and Stay Proceedings

Staropoli moves (1) to compel Plaintiffs to submit all claims in this case to arbitration pursuant to his 2019 Employment Agreement (the "Agreement") with Hussian College; and (2) stay all proceedings in this matter pending the outcome of arbitration. (ECF No. 45 at 1).

---

[3] In so doing, the Court will require Plaintiffs to formally file their Amended Complaint as a separate docket entry to make it clear in the record.

### A. Legal Standard

When addressing a motion to compel arbitration, the Court must first determine the standard of review to apply: either the motion to dismiss standard under Rule 12 or the motion for summary judgment standard under Rule 56. *Guidotti v. Legal Helpers Debt Resol., LLC.*, 716 F.3d 764, 771-72 (3d Cir. 2013). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the [Federal Arbitration Act (FAA)] would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773-74 (internal citations omitted). Where arbitrability is not apparent on the face of the complaint, "the issue should be judged under the Rule 56 standard." *Id.*

Here, Plaintiffs assert that Staropoli — despite knowing that bonuses could only be awarded at the sole discretion of the Board of Directors and required both formal Board approval and the recommendation of the Chairman — repeatedly paid himself unauthorized bonuses. (ECF No. 37-1 at 9). Plaintiff's assertion is premised on the existence of the Agreement,[4] a copy of which has been provided to the Court. Because it is undisputed that the Agreement contains an arbitration provision, the issue of arbitrability is apparent on the face of Amended Complaint. Thus, this Court finds that the Rule 12 motion to dismiss standard is applicable to determining the validity and enforceability of the arbitration provision at issue. *See Guidotti*, 716 F.3d at 772-74.

---

[4] Section 3(b) of the Agreement states that Staropoli's "annual bonus award will be based upon an assessment by the Board of Directors of [his] level of achievement of performance goals during the measuring period for such performance goals," and that "[t]he determination of the performance goals and the level of achievement of those goals by the Employee shall be made in the sole discretion of the Board of Directors upon the recommendation of the Chairman." (ECF No. 1-1 at 213).

### B. Discussion

Plaintiffs contend that (1) this matter should not go to arbitration because the Agreement does not require Plaintiffs or the other Defendants to arbitrate the claims in this case; and (2) Plaintiffs' claims fall outside the scope of the arbitration provision. The Court addresses both contentions below.

The FAA "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000). The primary substantive provision of the FAA, § 2, provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). This provision "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Further, § 2 "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* (internal citations omitted).

> Under the FAA:
>
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* If the court determines that the case must be arbitrated, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance

with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." *Id.* § 3.

Before compelling arbitration, a court must typically determine (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Here, Hussian College does not contest the validity of the Agreement or its arbitration provision; rather, it argues that the claims in this case do not arise out of the Agreement. The Court disagrees. Section 14 of the Agreement states, in relevant part,

> [s]hould *any controversy, dispute or claim* arise between Employer and Employee *relating to or arising out of* the subject matter of this Agreement, the relationship established hereby, [] any provision of this Agreement (including termination of employment), . . . or *under any federal, state or local law or ordinance* . . ., such controversy, dispute or claim shall be settled exclusively by arbitration administered in Philadelphia, Pennsylvania by the American Arbitration Association. . . . Employer and Employee each agree that, except for Employer's right to injunctive relief pursuant to Section 15 below, arbitration shall be the sole and exclusive remedy in the event any such controversy, dispute or claim shall arise.

(ECF No. 1-1 at 220) (emphasis added). The arbitration provision clearly states that it applies to "any controversy, dispute or claim" that relates to or arises under "any federal, state or local law or ordinance." Therefore, Hussian College's claims against Staropoli fall squarely within the arbitration provision in the Agreement.

Having found that the arbitration provision requires Hussian College to arbitrate its claims against Staropoli, the Court next turns to whether this matter should also go to arbitration for the other parties who did not sign the Agreement. Estoppel "can bind a non-signatory to an arbitration clause when that non-signatory has reaped the benefits of a contract containing an arbitration clause." *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 85 (3d Cir. 2010) (internal citation omitted). Equitable estoppel may apply under one of two theories, which the Third

8

Circuit outlined in *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187 (3d Cir. 2001):

> First, courts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement. . . .
>
> Second, courts have bound a signatory to arbitrate with a non-signatory "at the non-signatory's insistence because of 'the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non[-]signatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.'"

*Id.* at 199 (internal quotation and citation omitted). Here, the latter theory is inapplicable because this case involves a signatory attempting to bind a non-signatory to the arbitration clause, rather than the inverse. *See id.* at 202 ("Appellants recognize that these cases bind a *signatory* not a *non-signatory* to arbitration, but argue that this is a distinction without a difference. They are wrong.") Under the first theory, then, a party "knowingly exploits" an agreement either "(1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce terms of that contract or asserting claims based on the contract's other provisions." *Griswold v. Coventry First LLC*, 762 F.3d 264, 271-72 (3d Cir. 2014) (citations omitted).

In view of the allegations in the Amended Complaint, the Court finds that Plaintiffs Joshua Figuli, David Figuli, and Education Equities Funds are currently seeking to enforce Section 3(b) of the Agreement. In the Amended Complaint, these three Plaintiffs assert that, "[d]espite knowing Board approval was required and not obtained," Staropoli paid himself an unauthorized bonus in the amount of (1) $125,000 for the year of 2020; (2) $137,000 for the year of 2021; and (3) $150,000 for the year of 2022. (ECF No. 37-1 at ¶¶ 79, 95, 164). Based on these alleged breaches of the Agreement, Plaintiffs assert in Counts I through VI collectively that Staropoli "facilitated the misappropriation of Hussian's funds and resources for personal gain"

9

and "[f]alsified approval of improper bonuses and compensation." (Id. at ¶¶ 201, 213). As a result, the aforementioned Plaintiffs are equitably estopped from avoiding the arbitration provision contained in the Agreement.

As to the remaining Defendants, although none of them have responded to Staropoli's Motion, the Court declines to bind them to the arbitration provision in the Agreement. *See* E.D. Pa. Loc. R. Civ. P. 7.1(c). Given that these Defendants are, like Staropoli, alleged to have diverted company funds for their personal use and benefit, the Court is not in a position at this point to conclude that they have attempted to use the Agreement as a sword while also using their non-signatory status as a shield.

This case will be stayed and placed in civil suspense pending the outcome of arbitration. *See Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 322 (E.D. Pa. Jan. 17, 2017) (staying proceeding when defendant moved to dismiss or in the alternative to stay proceedings).

### V. Conclusion

For the foregoing reasons, the Court grants Plaintiffs' Amended Motion for Leave. In light of the Court granting Plaintiffs' Motion, the Court denies as moot Velocity and Scott's Motions to Dismiss. The Court also grants Staropoli's Motion to Compel Arbitration and Stay Proceedings, but only as to Plaintiffs. The action is stayed pending the arbitration's outcome. An appropriate Order follows.

BY THE COURT:

/s/ Kelley B. Hodge
_____
**HODGE, KELLEY B., J.**